IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-61-FL

| | |
|---|---|
| TIMOTHY R. LAYDEN, as Guardian of the Person of Aaron R. Layden, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS F. STANLEY in his individual capacity; LOGAN S. COPAS, in his individual capacity; LENOIR COUNTY SHERIFF RONNIE T. INGRAM; JOHN DOE SURETY COMPANY, <br><br> Defendants. | ORDER |

This matter is before the court upon partial motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), by defendants Thomas F. Stanley ("Stanley"), Logan S. Copas ("Copas"), and Lenoir County Sheriff Ronnie T. Ingram ("Ingram") (collectively, "defendants")[1] (DE 22). The issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this civil rights action June 15, 2022, and filed the operative amended complaint October 24, 2022, asserting claims under 42 U.S.C. § 1983 for excessive force by defendants in violation of the Fourth and Fourteenth Amendments, and for deliberately indifferent policies, practices, customs, hiring, and training, under Monell v. Dept' of Soc. Servs., 436 U.S.

---

[1] The court refers to moving defendants Stanley, Copas, and Ingram, collectively, as "defendants" for purposes of the instant order, where defendant John Doe Surety has not been identified or appeared.

658 (1978); as well as state law claims for gross negligence and battery against defendants Stanley and Copas, and an action for official bond against defendants Ingram and John Doe Surety. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and interest.

Defendants filed the instant motion to dismiss part of the claims against them for failure to state a claim upon which relief can be granted, relying upon a copy of an incident report referenced in the amended complaint. Plaintiff responded in opposition. Meanwhile, case management order entered October 27, 2022, provides a November 14, 2023, deadline for discovery.

## STATEMENT OF THE FACTS

The facts alleged in the complaint[2] may be summarized as follows. Plaintiff is the court-appointed guardian of the person for his son, Aaron R. Layden ("Aaron"), who "suffers from Bipolar 1 Disorder and Paranoid Schizophrenia." (Compl. ¶ 13). On June 15, 2019, plaintiff "sought an order from Lenoir County Magistrate Judge," requesting that Aaron "be involuntarily committed for his own safety and the safety of others," where Aaron had "stopped taking his medication." (Id.). "The Magistrate Judge issued the involuntary commitment paperwork as requested" by plaintiff. (Id.).

"Shortly after the involuntary commitment (IVC) was ordered, three (3) Lenoir County Sheriff's officers were dispatched to the Layden residence to obtain custody of Aaron and transport him to a medical facility for evaluation in accordance with the IVC order." (Id. ¶ 14). "The Sheriff's officers that were dispatched to the Layden residence were [d]efendant Stanley, [d]efendant Copas, and Lieutenant Christy Smith." (Id.).

---

[2] Hereinafter, all references to the "complaint" in the text or "Compl." in citations in this order are to the amended complaint (DE 20) unless otherwise specified.

2

"[A]t the time Officer Defendants were dispatched to the Layden residence to transport Aaron to a medical facility in accordance with the IVC order, both officers knew that Aaron suffered from mental illness and was suffering from an episode related to his mental illness." (Id. ¶ 15). "According to the Lenoir County Sheriff's Incident Report ('Incident Report'), upon their arrival, Defendants Stanley and Copas handcuffed Aaron 'without incident.'" (Id. ¶ 16). "Defendant Stanley ensured that Aaron's handcuffs were 'double locked.'" (Id.). "In response to being handcuffed, Aaron 'mouthed off' to [d]efendants Stanley and Copas." (Id.).

"Once handcuffed, [d]efendants Stanley and Copas escorted Aaron out of the house, onto the concrete front porch." (Id. ¶ 16). "According to the Incident Report, because Aaron continued to 'mouth off' to the officers as he was escorted to the patrol car, [d]efendants Stanley and Copas slammed Aaron to the ground on the concrete front porch, fracturing Aaron's left elbow." (Id.). "Prior to being slammed to the ground, Aaron had not been combative, or otherwise violent towards the officers." (Id. ¶ 28). "Aaron was handcuffed, possessed no weapon, and did not try to flee." (Id.). "He had only 'mouthed off,' after being handcuffed 'without incident.'" (Id.).

"While Aaron was being held on the ground, [d]efendant Stanley shackled Aaron's ankles." (Id. ¶ 17). "Once handcuffed and shackled, [d]efendants Stanley and Copas picked Aaron up off the ground and carried him to the patrol car." (Id.). At "the emergency department at UNC Lenoir Hospital, . . . Aaron complained of extreme pain in his left elbow" and was diagnosed with a fractured left arm. (Id. ¶ 19). Aaron subsequently underwent surgery for the fracture and a plate was surgically inserted into his arm. (Id. ¶ 25).

On December 20, 2019, plaintiff filed a complaint with the Lenoir County Sheriff's Office regarding the actions of defendants Stanley and Copas on June 15, 2019. According to the

3

complaint, the Lenoir County Sheriff's Office "ignored [the] complaint and refused to investigate the matter." (Id. ¶ 26).

**COURT'S DISCUSSION**

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.  Analysis

  1.  Monell claim

Defendants argue that plaintiff's Monell claim against defendant Ingram must be dismissed for failure to allege facts giving rise to an inference of unconstitutional policies, practices, customs, hiring and training. The court agrees.

Under Monell, a local government entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. 436 U.S. at 694. "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through

---

[3]   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

"An official policy often refers to formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." Semple v. City of Moundsville, 195 F.3d 708, 712–13 (4th Cir. 1999). "While municipal policy is most easily found in municipal ordinances, it may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy." Edwards v. City of Goldsboro, 178 F.3d 231, 244–45 (4th Cir. 1999). "A final policymaker for the purposes of municipal liability is someone who has the responsibility and authority to implement final municipal policy with respect to a particular course of action." Lytle, 326 F.3d at 472. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

With respect to a Monell claim based upon failure to train or custom and usage, "[a] plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014). A plaintiff must allege "continued inaction in the face of documented widespread abuses," Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999), such as through allegations of "the existence of reported and unreported cases and numerous

5

successful motions which, if true, would buttress" an assertion of a custom or usage. Owens, 767 F.3d at 403. In Owens, for example, the court found sufficient allegations that "reported and unreported cases from the period of time before and during the events complained of establish that [a police department] had a custom, policy, or practice of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions." Id.

Here, plaintiff has not alleged facts sufficient to give rise to a plausible inference of Monell liability. As an initial matter, plaintiff fails to allege any Sheriff's Department policy maintained by defendant Ingram, the "execution of" which "inflict[ed] the injury" to plaintiff or Aaron. Monell, 436 U.S. at 694. While plaintiff asserts that defendant Ingram "maintained a policy, custom, or practice that has been the cause, the moving force, behind the violation of Aaron's rights," (compl. ¶ 46), this is a conclusory assertion that is not supported by factual allegations giving rise to a plausible inference of liability on this basis.

Turning to plaintiff's assertion of a Monell claim based upon failure to train or custom and usage, plaintiff has not alleged a "persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens, 767 F.3d at 402. The facts in the complaint do not support an inference of "continued inaction in the face of documented widespread abuses." Grayson, 195 F.3d at 697.

Plaintiff argues that he has sufficiently pleaded a Monell claim based upon the combination of four alleged facts: 1) defendants Stanley and Copas were not disciplined after the incident with Aaron, 2) defendant Ingram did not require them to undergo additional training, or remedial training, after the incident, 3) plaintiff's complaint to the Lenoir County Sheriff's Office was ignored and no investigation occurred, and 4) another individual was the victim of excessive force

6

by deputies of the Lenoir County Sheriff's Office in 2012. (See Pl's Mem. (DE 28) at 4-5; compl. ¶¶ 46-47).

Plaintiff's argument is unavailing for several reasons. First, with respect to the first three enumerated allegations, these are insufficient to establish liability based upon failure to train or custom and usage because they do not relate to "the period of time before and during the events complained of." Owens, 767 F.3d at 403. Second, they concern only defendant Ingram's alleged actions and omissions as it pertains to the single incident in the instant case. As such, they do not show "persistent and widespread practice of municipal officials" or "documented widespread abuses." Owens, 767 F.3d at 402; Grayson, 195 F.3d at 697.

Third, the alleged 2012 incident is insufficient to nudge the claim from conceivable to plausible under this standard due to multiple shortcomings. Because it took place before defendant Ingram allegedly was elected Sheriff in November 2014 (see compl. ¶ 5), and because it constitutes one example of excessive force seven years prior to the incident in this case, it does not "indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens, 767 F.3d at 402. Moreover, the case cited by plaintiff, concerning Brittany McPhail in 2012, involved different officers, different alleged grounds for arrest, and no allegation of "interacting with individuals with mental disabilities," as here. (Compl. ¶ 49; see McPhail v. Felton, 4:15-CV112-BO (E.D.N.C. July 2, 2015)).

In sum, plaintiff fails to allege sufficient facts to give rise to a plausible inference of Monell liability, based upon either unconstitutional policy, or failure to train, or custom and usage. Therefore, plaintiff's Monell claim against defendant Ingram must be dismissed for failure to state

7

a claim upon which relief can be granted.[4] Accordingly, defendants' motion to dismiss is granted in this part.

2. Gross Negligence and Public Officer Immunity

Defendants argue that plaintiff fails to allege facts supporting his gross negligence claim that are sufficient to overcome public officer immunity under North Carolina law. The court disagrees.

"Under North Carolina's public official immunity doctrine . . . a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022). "Elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Id. "Because willful or wanton conduct is a higher standard than gross negligence, this inquiry obviates any need to separately determine whether the complaint adequately states a claim for gross negligence," if the court determines that the complaint states a claim meeting the standard to overcome public official immunity. Est. of Long by & through Long v. Fowler, 378 N.C. 138, 151 (2021).

Here, plaintiff has alleged facts to give rise to a plausible inference that defendants Stanley and Copas engaged in the challenged action "with malice" sufficient to overcome public official immunity. Knibbs, 30 F.4th at 227. In particular, plaintiff alleges that Aaron was an "individual suffering from a psychotic episode arising from his mental illness," and officers were called to the scene for an involuntary commitment. (Compl. ¶ 30). According to the complaint, "[p]rior to

---

[4] Although plaintiff names defendant Ingram in his first cause of action based upon excessive force, plaintiff does not allege any conduct by defendant Ingram in applying excessive force to Aaron. Rather, plaintiff asserts in the complaint that defendant Ingram is liable "through the Sheriff's official policies, practices and procedures." (Compl. ¶¶ 41, 43). Where such liability is addressed under Monell, and where the court dismisses plaintiff's Monell claim, that part of plaintiff's claim for excessive force against defendant Ingram also must be dismissed in conjunction with dismissal of plaintiff's Monell claim.

8

being slammed to the ground, Aaron had not been combative, or otherwise violent towards the officers"; he was "handcuffed, possessed no weapon, and did not try to flee"; he had "only 'mouthed off' after being handcuffed 'without incident.'" (Compl. ¶ 28). When viewed in the light most favorable to plaintiff, these facts permit an inference that officers' actions were "with malice" and "intended to be injurious" to Aaron, when they allegedly "slammed [him] to the ground," without warning on hard concrete, and in a manner that fractured his arm, as alleged in the complaint. (Compl. ¶ 17).

Defendants suggest that plaintiff's claim is defeated by public officer immunity because defendant officers allegedly "were acting in the course and scope of their employment." (Defs' Mem. (DE 23) at 7). However, this suggestion is beside the point, where an officer acting in "the scope of official authority" still may be liable if the challenged action was "done with malice." Knibbs, 30 F.4th at 227.

Defendants also encourage the court to adopt for purposes of the instant analysis the facts stated in the Incident Report, where that document is referenced in the complaint and attached to their motion to dismiss. The Incident Report, however, is unhelpful to defendants at this juncture for three reasons. First, while the court may consider the Incident Report upon a motion to dismiss, "Rule 10(c) does not require a plaintiff adopt every word within the exhibits as true for purposes of pleading simply because the documents were [referenced in] the complaint to support an alleged fact." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016). This is particularly true, where, as here, "the document is one prepared by or for the defendant." Id. at 168. "Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." Id.

9

Second, the statements in the Incident Report do not preclude a determination that plaintiff has stated a claim overcoming public officer immunity. In particular, the Incident Report states that Aaron and officer engaged in conversation about the name of the hospital to which he was headed, Aaron "mouthed off," and officers "handcuff[ed] Aaron without incident." (DE 23-1 at 2). As officers "came through the front door and Aaron was still talking," defendant Copas "put his foot behind [] Aaron's leg to help [defendant Stanley] put Aaron on the ground." (Id.) (emphasis added). When viewed in the light most favorable to plaintiff, these emphasized statements reflecting "defendant's version of contested events," Goines, 822 F.3d at 168, are not in conflict with allegations in the complaint that Aaron was "slammed" to the ground while handcuffed, without warning, and without a basis in officer safety. (Compl. ¶ 17). Viewed in this light, officers' actions were "done wantonly" and "intended to be injurious" to Aaron. Knibbs, 30 F.4th at 227.

Third, plaintiff's gross negligence claim against defendants Stanley and Copas arise from the same alleged facts supporting plaintiff's § 1983 claim, involving consideration of many of the same factual issues. See, e.g., Graham v. Connor, 490 U.S. 386, 396 (1989); Knibbs, 30 F.4th at 228 ("The same facts that a jury could find that would permit the conclusion that Deputy['s] use of force was unreasonable under the Fourth Amendment would also permit a finding that he acted contrary to his duties as a law enforcement officer."). Where plaintiff's § 1983 claim is continuing against defendants Stanley and Copas, the court leaves for a later juncture consideration of the evidence concerning the nature of their challenged conduct.

In sum, plaintiff has alleged sufficient facts to overcome public officer immunity with respect to plaintiff's claim for gross negligence. Therefore, that part of defendants' motion seeking dismissal of plaintiff's gross negligence claim is denied.

10

3. Bond Claim

Defendants argue that plaintiff's bond claim, under N.C. Gen. Stat. § 58-76-5, should be dismissed because all claims against defendant Ingram are dismissed and defendants Stanley and Copas are being sued in their individual capacity.

Dismissal of plaintiff's bond claim, however, is premature where plaintiff has stated a claim for gross negligence exceeding the public official immunity bar against defendants Stanley and Copas. With that claim remaining, "[l]iability under the bond also extends to the acts of a sheriff's deputy, for the acts of the deputy are acts of the sheriff" for purposes of this claim under North Carolina law. Knibbs, 30 F.4th at 230.

Accordingly, that part of defendants' motion seeking dismissal of plaintiff's bond claim against defendant Ingram and John Doe Surety is denied.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 22) is GRANTED IN PART and DENIED IN PART as set forth herein. In particular, plaintiff's Monell claim against defendant Ingram is DISMISSED, and that part of plaintiff's § 1983 excessive force claim against defendant Ingram also is DISMISSED. Plaintiff's claim against defendants Stanley and Copas for gross negligence, as delineated herein, is allowed to proceed, along with plaintiff's bond claim against defendants Ingram and John Doe Surety. Plaintiff's § 1983 excessive force claim and battery claim against defendants Stanley and Copas, not addressed herein, also remain.

SO ORDERED, this the 30th day of May, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge